UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-CIV-62381-BLOOM/Valle

JAMAAL ANDERSON, *et al.*,

    Plaintiffs,

v.

BRANCH BANKING AND TRUST COMPANY,
as successor in interest to BankAtlantic, LLC,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court upon Defendant Branch Banking and Trust Company's Motion to Dismiss Plaintiffs' Third Amended Complaint, ECF No. [78]. The Court has reviewed the motion, all supporting and opposing filings, and the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, Defendant's motion is now granted in part and denied in part.

## I. BACKGROUND

Plaintiffs in this matter are fifteen current and former football players employed by teams in the National Football League (collectively, "Plaintiffs"). ECF No. [75] at ¶ 22. Each individual Plaintiff entered into a separate "Client Service Agreement" with Pro Sports Financial, Inc. ("Pro Sports"), under which Pro Sports would provide each player with tax planning, business counseling, and concierge services. *Id.* at ¶ 23. By virtue of this relationship, Pro Sports deposited tens of millions of dollars belonging to Plaintiffs into accounts at Defendant Branch Banking and Trust Company ("BB&T"), which maintained a special division dedicated

1

to servicing athletes and other high-wealth individuals in the sports and entertainment industry. *Id.* at ¶¶ 26-28. Prior to the opening of each account, BB&T was provided with copies of the Client Service Agreement, thereby informing BB&T of the scope of the services provided by Pro Sports to each Plaintiff. *Id.* at ¶ 29.

Notwithstanding the Client Service Agreement, Plaintiffs allege that some of the accounts Pro Sports opened were illegitimate, opened by Pro Sports employees using forged signatures. *Id.* at ¶ 30. Some accounts were opened and maintained by BB&T employee Steve Johnson as "power of attorney accounts" without Plaintiffs' informed consent between October 16 and 17, 2006 (the "Group A Accounts"), using monies previously held on deposit by these Plaintiffs with BB&T (the "Group A Plaintiffs").[1] *See id.* at ¶¶ 51-55, 60. However, none of the Group A Plaintiffs had ever executed a power of attorney relating to the individual Group A Accounts prior to the date that they were opened. *Id.* at ¶¶ 61-62. Although Pro Sports had properly executed signature cards for the Group A Plaintiffs, the cards were solely applicable to the validly opened accounts. *See id.* at ¶ 56. Critically, the Group A Accounts listed Pro Sports address as the mailing address on the account, thereby preventing the Group A Plaintiffs from realizing the inappropriate and unauthorized activity. *Id.* at ¶¶ 57-59. Thus, BB&T allowed the Group A Accounts to be opened, utilized, and maintained without following protocols and without due care with respect to the authenticity of the signature cards associated with the account. *Id.* at ¶¶ 65-69. Eventually, during the summer of 2012, the Group A Plaintiffs became aware of the Group A Accounts and the misuse of their funds. *Id.* at ¶ 71.

---

[1] The Group A Plaintiffs include Plaintiffs Derrick Gaffney, Frank Gore, Jevon Kearse, Kenard Lang, Ray Lewis, Santana Moss, Clinton Portis, Lito Sheppard, and Fred Taylor. *See* ECF No. [75] at ¶¶ 51-52.

Additional accounts "power of attorney accounts" were also opened between October 11, 2006 and March 27, 2008 (the "Group B Accounts"). *Id.* at ¶¶ 82-83, 85. The designated attorneys in fact were Pro Sports employees. *Id.* at ¶ 84. Pursuant to the Client Service Agreements, the Group B Accounts were to be used strictly for concierge or bill pay services. *Id.* at ¶¶ 87-88. Despite this limitation, BB&T allowed unauthorized Pro Sports employees, not the authorized attorney's in fact for the accounts, to open the additional power of attorney accounts on behalf of the remaining Plaintiffs (the "Group B Plaintiffs").[2] *See id.* at ¶¶ 89-91. After the improper accounts were opened, unauthorized individuals were permitted to wire significant sums of Group B Plaintiffs' monies for unauthorized or improper lending or business purposes without the Group B Plaintiffs' knowledge and/or consent. *Id.*

Notably, BB&T then allowed a multitude of suspicious withdrawals from the illegitimate accounts that exceeded the scope of the services identified in the Client Services Agreement, repeatedly failing to make any effort to confirm authorization for such withdrawals with the Plaintiffs named on the accounts. *Id.* at ¶¶ 35, 36. For instance, BB&T permitted Peggy Lee, a Pro Sports employee, as well as other Pro Sports employees, to make "CashLink" wire transfers when none of these individuals had the Power of Attorney or other authority to do so. *See id.* at ¶¶ 37-41. Other unauthorized transfers were also made by individuals lacking authority, in contravention of the appropriate safeguards, controls, and internal BB&T procedures. *See id.* at ¶ 37, 42-43. According to Plaintiffs, many of these transfers were used to invest Plaintiffs' funds in a casino project in Alabama known as "Center Stage a/k/a Country Crossing" (the "Country Crossing Project"). *Id.* at ¶ 44. The primary aspect of the Country Crossing Project was casino-style gambling, which was outlawed under Alabama law in July 2012, causing the Country

---

[2] The Group B Plaintiffs include Plaintiffs Jamaal Anderson, Jacob Bell, Tavares Gooden, Santonio Holmes, Brandon Meriweather, and Gerard Warren. *See* ECF No. [75] at ¶¶ 82-83.

Crossing Project to fail. *Id.* at ¶ 45. As a result of the failed project and other transactions—all of which occurred without Plaintiffs' knowledge, authorization, or consent—Plaintiffs lost millions of dollars. *See id.* at ¶¶ 46-47, 49.

On October 31, 2013, Plaintiffs filed their initial Complaint, ECF No. [1]. The day after filing, and prior to Defendant's response, Plaintiffs filed an eleven-count Amended Complaint, ECF No. [3]. On January 6, 2014, BB&T moved to dismiss the Amended Complaint. *See* ECF No. [12]. On May 19, 2014, the Honorable Robin S. Rosenbaum entered an order granting in part and denying in part BB&T's Motion to Dismiss. *See* ECF No. [35]. Plaintiffs then filed their Second Amended Complaint, containing a mere four counts. *See* ECF No. [45]. Again, BB&T requested the Court to dismiss the operative Complaint; however, in response, Plaintiffs sought leave to amend, and such leave was granted. *See* ECF Nos. [67] and [73]. Accordingly, presently before the Court is Plaintiffs' Third Amended Complaint, which contains four counts similar to those presented in the Second Amended Complaint. *Compare* ECF No. [45] *with* ECF No. [75]. Under Count I, negligence, the Group A Plaintiffs contend that BB&T was negligent in the operation and maintenance of the accounts with respect to the safekeeping of funds, including obtaining proper authorization from the account holders. *See* ECF No. [75] at ¶¶ 102-07. Count II asserts a claim for breach of contract as to the Group B Plaintiffs, alleging that upon the opening of each Group B Account, the Group B Plaintiffs and BB&T entered into a contractual relationship which was breached when BB&T accepted and acted upon unauthorized instructions on the Group B Accounts resulting in illegitimate transfers. *Id.* at ¶¶ 108-18. Lastly, both the Group A Plaintiffs and the Group B Plaintiffs bring a claim for refund of unauthorized and ineffective funds transfer under Chapter 670, Florida Statutes (Counts III and IV, respectively). *Id.* at ¶¶ 119-132. Yet again, Defendant BB&T seeks dismissal, asserting that

4

even after Plaintiffs' several amendments, the Third Amended Complaint fails to comport with Judge Rosenbaum's Order and, otherwise, fails to state a claim upon which relief can be granted. *See* ECF No. [78].

## **II. LEGAL STANDARD**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Supreme Court

was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

**A.     The Statute of Limitations Does Not Bar Counts I and III**

Judge Rosembaum's May 19th, 2014 Order is of great import as the parties appear to dispute the holding contained therein. As with BB&T's first motion to dismiss, BB&T continues to argue that the Group A Plaintiffs' claims are barred by Florida's applicable statute of limitations, an issue seemingly resolved by Judge Rosenbaum's Order. ECF No. [78] at 7-14. Section 95.11(3), Florida Statutes, provides that both "action[s] founded on negligence . . . [or] [a]ny action not specifically provided for in these statutes" must be commenced within four years from the time the cause of action accrues. "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). "The last element constituting a cause of action for negligence . . . is the occurrence of damages." *Kelly v. Lodwick*, 82 So. 3d 855, 857 (Fla. 4th DCA 2011) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)). Accordingly, the determination of when damages accrued is critical to the Class A Plaintiffs' claims: if all damages occurred on October 16 and 17, 2006, then the claims were barred as of October 16 and 17, 2010.

When presented with the statute of limitations issue on BB&T's first motion to dismiss, Judge Rosenbaum ascertained that the "Group A Plaintiffs suffered damages as soon as Pro Sports diverted funds away from the only accounts of which they were aware without their authorization." ECF No. [35] at 7. Taken out of context, this statement appears to support BB&T's contention that the Group A Plaintiffs' allegations are time barred. However, Judge Rosenbaum continued, stating that "Plaintiffs also suffered damages when [BB&T] authorized

6

transactions in which Pro Sports transferred funds out of the unauthorized accounts to third-party accounts." *Id.* Based on these additional damages, Judge Rosenbaum concluded that any transactions occurring on or after October 31, 2009, would not be time barred by § 95.11(3). *Id.* Leave to amend was granted with the specific instruction that Plaintiffs shall "allege[] the dayes on which the allegedly wrongful transactions occurred." *Id.*

Despite Judge Rosenbaum's apparent resolution of this issue, the parties continue to litigate whether if damages accrued when the funds were transferred from the authorized accounts to the unauthorized Group A Accounts on October 16 and 17, 2006, or whether such damages did not occur until Plaintiffs' monies were transferred out of the unauthorized Group A Accounts. BB&T contends that Plaintiffs have not complied with Judge Rosenbaum's instruction, failing to introduce any new facts in the Third Amended Complaint that would permit the Group A Plaintiffs to circumvent the statute of limitations. BB&T's reading of the Judge Rosenbaum's Order is inaccurate to say the least. Judge Rosenbaum unequivocally noted that the Group A Plaintiffs' negligence and Chapter 670 claims were dismissed *only* with respect to the October 2006 opening of the Group A Accounts; any claims stemming from transactions that occurred after October 31, 2009, were not similarly barred. *Id.* (holding that Plaintiffs' claims "are dismissed with respect to the October 2006 opening of the Group A Accounts and any other transactions that occurred prior to October 31, 2009, *only*" (emphasis added)).

Moreover, BB&T apparently ignores Exhibit E attached to Plaintiffs' Third Amended Complaint, which contains a list of every allegedly harmful transfer from the unauthorized Group A Accounts and to whom those transfers were made, if it can be so determined. *See* ECF No. [75-5]. While the list admittedly contains transfers that are barred by the statute of limitations in accord with Judge Rosenbaum's Order, it also contains a multitude of non-barred

7

transactions. *See id.* As previously noted by Judge Rosenbaum, any claim stemming from the opening of the Group A Accounts in October 2006, as well as any unauthorized transfer therefrom occurring prior to October 31, 2009, are untimely. However, those claims accruing after October 31, 2009, are not prohibited under the statute. Thus, the Court declines to dismiss Counts I and III as they relate to transactions occurring after the above-referenced date.[3]

### B.  Count I is Not Inconsistent with the U.C.C.

While the U.C.C. preempts claims inconsistent with the rights, duties, and liabilities contained therein, the Code does not purport to create the "exclusive means" by which a plaintiff may seek to remedy an alleged harm suffered as a result of a funds transfer. *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274-75 (11th Cir. 2003) (citation omitted); *see also Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 971 (Fla. 3d DCA 1998) (finding that Article 4A preempted plaintiff's negligence claim, but withholding judgment on whether Article 4A preempts negligence claims in all cases). Indeed, the Eleventh Circuit has noted that Article 4A is "replete with references to common law remedies," and is more appropriately viewed as existing to create a synergy between it and other legal doctrines. *Regions Bank*, 345 F.3d at 1275 ("[T]he Drafting Committee intended that Article 4A would be supplemented, enhanced, and in some places, superseded by other bodies of law . . . the Article is intended to synergize with other legal doctrines." (quoting T.C. Baxter & R. Bhala, *The*

---

[3] The remainder of BB&T's argument with respect to the statute of limitations, notably, those arguments pertaining to the specific date that the Group A Plaintiffs' damages accrued, has already been brought before the Court and rejected. *See* ECF No. [35] at 7. As noted, Judge Rosenbaum's Order is clear: "Plaintiffs also suffered damages when Bank Atlantic authorized transactions in which Pro Sports transferred funds out of the unauthorized accounts to third-party accounts." *Id.* The Court will not allow the parties to once again litigate a matter previously disposed of. Further, the Court will not simply disregard Judge Rosenbaum's well-reasoned decision on account of nonbinding authority such as *Zublin Chile Ingenieria Y Construcciones LTDA v. Total Bank*, 2014 WL 3747138 (Fla. 11th Cir. Ct. 2014).

*Interrelationship of Article 4A with Other Law*, 45 Business Lawyer 1485, 1485 (1990))). Thus, the only limitation imposed upon a plaintiff is that she may not resort to the common law in order to create rights, duties, and liabilities that are *inconsistent* with those contained in the Article, see *id.* (quoting U.C.C. § 4A-102 cmt.); "[c]ommon law and equitable principles, where they compliment the important policy considerations of the Article and are not inconsistent with any of its specific provisions, can and should be used to resolve conflicts between parties . . . ." *Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd.*, 951 F. Supp. 403, 410 (S.D.N.Y. 1995), *cited with approval in Regions Bank*, 345 F.3d at 1274-75.

As a consequence of Judge Rosenbaum's finding that the Group A Plaintiffs' claims based on the negligent opening of the Group A Accounts are barred by the statute of limitations, BB&T contends that any negligence claim must be predicated upon the alleged individual unauthorized transfers. Because of this, BB&T asserts that any negligence based upon unauthorized transactions is preempted by the requirements of the Uniform Commercial Code ("U.C.C."). More specifically, BB&T contends that §§ 674.401 and 670.204, Florida Statutes, codifying U.C.C. §§ 4-401 and 4A-204, respectively, sets forth the rights, duties, and remedies applicable to the alleged unauthorized transfers, and, therefore, Plaintiffs cannot circumvent the statutory scheme and seek refuge in the common law.

Section 670.204, Florida Statutes, governs unauthorized wire transfers, and provides

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer under s. 670.202 or is not enforceable, in whole or in part, against the customer under s. 670.203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary

9

> care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding 90 days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order. The bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section.

Fla. Stat. § 670.204(1). Thus, Article 4A imposes specific rights and duties on the parties when an unauthorized transfer has been effectuated, notably, return of the payment and interest on the refundable amount. *See id.* At first blush, it appears that by pleading their claims under the common law doctrine of negligence, Plaintiffs attempt to sidestep these obligations.

In response, Plaintiff relies on *Gilson v. TD Bank, N.A.*, where this Court held that a claim premised on the allegedly negligent opening of unauthorized accounts was not inconsistent with the rights, duties, and liabilities in Article 4A. *See* 2011 WL 294447, at *9 (S.D. Fla. Jan. 27, 2011). The Court does not disagree that the alleged *opening* of the accounts can be appropriately pursued as a claim for negligence not inconsistent with Article 4A and § 670.204, Florida Statutes. *See id.* However, as held by Judge Rosenbaum, any claim predicated on the unauthorized opening of the accounts is barred by the statute of limitations. *See* ECF No. [35] at 7. Plaintiff fails to address how the claims predicated on the individual unauthorized transactions are consistent with the U.C.C and the applicable Florida Statute.[4]

Because § 670.204 provides a remedy for an individual who has been harmed by virtue of an unauthorized transaction, BB&T argues that Plaintiffs' attempt to bypass such relief is

---

[4] *See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." (internal quotations omitted)).

inconsistent with said statute. Yet, BB&T fails to demonstrate such an inconsistency with respect to Plaintiffs' allegations, merely stating in a conclusory fashion that an inconsistency exists. Critically, because Plaintiff's seek recovery of the funds subject to the allegedly unauthorized transfers, the remedy they pursue is not *inconsistent* with the U.C.C. *See Regions Bank*, 345 F.3d at 1275. Rather, the claim is an attempt to plead in the alternative, but not necessarily in an inconsistent fashion. Accordingly, the Court declines to dismiss Plaintiff's claim for negligence on this argument.

### C.  The Group B Plaintiffs' Claim for Breach of Contract is Imprecise

The Group B Plaintiffs' claim for breach of contract is premised upon the existence of a signature card, a Depositor's Agreement, and the applicable power of attorney. ECF No. [75] at ¶ 110. Plaintiffs admit that they are not in possession of the documents at this time, but instead seek to recover them, presumably, through discovery. *See id.* at ¶¶ 110-11. Nevertheless, the Third Amended Complaint alleges that BB&T breached these contractual agreements "with one or more Group B Plaintiffs by occasionally accepting and acting upon instructions on the Group B Accounts that resulted in wire transfers, CashLink wire transfers or automated checks that were not properly authorized." *Id.* at ¶ 114.

Nonetheless, BB&T asserts that the Third Amended Complaint is imprecise. To the contrary, Plaintiffs have identified the specific transactions at issue and alleged who they believe to have made those transactions without holding the applicable power of attorney.[5] In order to

---

[5] Again, Judge Rosenbaum's Order is of note. Previously, the Group B Plaintiffs asserted three theories of breach: (1) that a breach occurred by virtue of the opening of the power of attorney accounts without having a valid power of attorney; (2) that a breach occurred when BB&T allowed funds from the Group B Accounts to be transferred to fund transactions that exceeded the scope of the applicable power of attorney; and (3) that BB&T breached by occasionally accepting and acting upon instructions by one or more persons who were not named as power of attorney on the account. *See* ECF No. [4] at ¶¶ 93-95. Judge Rosenbaum dismissed the breach

state a claim for breach of contract under Florida law, a plaintiff must plead that there was (1) a valid contract, (2) a material breach, and (3) damages. *Int'l Star Registry of Illinois v. Omnipoint Mktg.*, LLC, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007) (citing *Abbott Lab., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). BB&T contends that Plaintiffs' failure to identify what specific contractual provision was breached constitutes a "defendant unlawfully harmed me" accusation which is impermissible under the Federal Rules of Civil Procedure. This Court has dismissed claims for breach of contract where it is unclear what provision or obligation under the contract has been violated.[6] *See George v. Wells Fargo Bank, N.A.*, 2014 WL 61487 (S.D. Fla. Jan. 8, 2014) ("The Amended Complaint does not identify which provision of the [contract] has been breached and therefore runs afoul of *Twombly*."); *Gentry v. Harborage Cottages-Stuart, LLLP*, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) ("Where the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss."); *see also Whitney Nat. Bank v. SDC Communities, Inc.*, 2010 WL 1270264 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract claim where plaintiff

---

of contract claim only with regard to the first and second theories of liability, to wit, BB&T could not be held liable under a theory of breach of contract "for opening power-of-attorney accounts without having a power of attorney and allowing transactions that exceeded the scope of the applicable power of attorney." ECF No. [35] at 11. The Group B Plaintiffs were allowed to amend in order to specify which transactions from which accounts were conducted by individuals who were not the applicable attorneys in fact. ECF No. [35] at 11. Plaintiffs have appropriately amended; the Third Amended Complaint indicates the various transfers allegedly made by Pro Sports employees who were not, in fact, the applicable attorneys in fact. *See* ECF No. [75-6].

[6] Plaintiffs' point to the fact that Judge Rosenbaum's Order did not address additional information required by Plaintiffs in filing their Second Amended Complaint as evidence that nothing further was needed besides the information specifically requested in the Order. However, Judge Rosenbaum's Order did not address the issue at hand, but rather, focused on the fact that the Amended Complaint lacked information on the unauthorized transactions. *See* ECF No. [35] at 11.

12

failed "to allege the specific provision of the contract allegedly breached"). Furthermore, the document attached as the "Depositor's Agreement" is so unintelligible that the Court is unable to verify on its own whether a provision can reasonably be interpreted to have been breached. *See* ECF No. [75-7]. Accordingly, this claim must be dismissed; however, Plaintiffs shall have the opportunity to amend to further specify in what manner the alleged contracts were breached.[7]

### D. Counts III and IV are Sufficient to Survive a Motion to Dismiss

Finally, BB&T asserts that Counts III and IV, claims for refund of unauthorized and ineffective funds transfer, cognizable under Chapter 670, Florida Statutes, fail to state a claim upon which relief can be granted. To reiterate, § 670.204, Florida Statutes, states

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of the customer under s. 670.202 or is not enforceable, in whole or in part, against the customer under s. 670.203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding 90 days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order. The bank is not entitled to any recovery from the customer on account

---

[7] BB&T further avers that the Depositor's Agreement between the parties places the burden on the Plaintiffs to discover unauthorized transactions. However, an issue of contract interpretation is not appropriately engaged under a motion to dismiss. *Assa Compania De Seguros, S.A. v. Codotrans, Inc.*, 2014 WL 1515239, at *4 (S.D. Fla. Apr. 18, 2014) (citing *McKissack v. Swire Pac. Holdings, Inc.*, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011)) (noting that a dispute over contract interpretation is more appropriate for summary judgment); *see also Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011) ("A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a[] motion to dismiss."). Therefore, the Court will not dismiss Count II on this ground.

13

>of a failure by the customer to give notification as stated in this section.

Fla. Stat. § 670.204(1). In sum, actions falling under this provision include situations where a receiving bank accepts a payment order or transfers funds when it was not authorized to do so.

First, BB&T asserts that the only transfer at issue is the initial funding transfer to the unauthorized accounts. However, the plain language of § 670.204 does not place such a limitation on the customer; if the receiving bank, in this case BB&T, accepts an unauthorized payment order—the funds transfers found in Exhibit E to Plaintiffs' Third Amended Complaint, ECF No. [75-5] (Group A Plaintiffs)—then such a transaction presumably falls under the provision. Plaintiffs' allegations, accepted as true, unequivocally state that BB&T accepted funds transfers out of the Group A Accounts, whether such accounts, and the initial funding of the same were authorized or unauthorized is immaterial with respect to the later transfers. Furthermore, the Third Amended Complaint states that the "Group A Plaintiffs had no agreement in place with BB&T regarding funds transfers or security procedures with respect to any funds transfers," thereby rebutting BB&T's contention that the Depositor's Agreements covered the challenged transfers.

Second, BB&T claims that Plaintiffs' are obligated to identify the particular individuals who authorized or initiated each transaction at issue in order to ascertain whether those individuals had the actual or apparent authority to make the transfers. This argument is not ripe for adjudication at this stage of the litigation: "[t]he existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial." *Orlando Executive Park Inc. v. Robbins*, 433 So. 2d 491, 494 (Fla. 1983); *see also Citibank, N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 691 (11th Cir. 1987) ("It is well settled under Florida law that the existence of an agency relationship, the nature and extent of the

agent's authority, and the inclusion within the scope of that authority of a particular act are ordinarily questions to be determined by the jury or by the trier of facts in accordance with the evidence adduced in the particular case."). Moreover, Plaintiffs have alleged who they suspect is behind the unauthorized transactions, and further allege that these individuals lacked the authority to make the transfers at issue. While it is true that a payment order is deemed authorized if the sender was an agent of the authorized individual, see Fla. Stat. § 670.202(1) ("A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."), the Court respectfully declines to determine whether an agency relationship existed at the pleading stage.

BB&T's final argument is directed solely at Count IV and the Group B Plaintiffs. Unlike Count III of the Third Amended Complaint, Count IV does not contain an allegation that the Group B Plaintiffs had no agreement in place with BB&T regarding funds transfers or security procedures. According to BB&T, this omission is critical as § 670.202 states that a transfer is deemed to be authorized where the parties have agreed to a commercially reasonable security procedure. *See* Fla. Stat. § 670.202(2). Pursuant to § 670.202, where a receiving bank receives a payment order, such an order will be deemed authorized, whether or not actually so, if there is a security procedure in place, the security procedure is a commercially reasonable one, and the bank acted in good faith.[8] *See id.* Yet, BB&T fails to acknowledge certain allegations present in

---

[8] This provision reads, in its entirety, as follows:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, *whether or not authorized*, if the security procedure is a

15

the Third Amended Complaint. Although it appears that a security procedure may have been executed by other individuals with respect to the Plaintiffs' accounts, the Third Amended Complaint specifically alleges that Plaintiffs, neither Group A and Group B, were privy to the agreements or took part in the execution of the same. *See* ECF No. [75] at ¶¶ 42-43; *see also* ECF No. [75-4] (example of security procedure not signed by individual Plaintiff). Count IV has been sufficiently pled to survive a motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Branch Banking and Trust Company's Motion to Dismiss Plaintiffs' Third Amended Complaint, **ECF No. [78]**, is **GRANTED IN PART and DENIED IN PART**;

2. The Motion is **GRANTED** with respect to Count II of the Third Amended Complaint, ECF No. [75], which shall be **DISMISSED WITHOUT PREJUDICE**;

3. The Motion is **DENIED** with respect to Counts I, III, and IV of the Third Amended Complaint, ECF No. [75];

4. Plaintiffs shall file a Fourth Amended Complaint on or before **November 17, 2014**, that further specifies the manner in which a contract was breached. Failure to do so will deem Count II dismissed.

---

commercially reasonable method of providing security against unauthorized payment orders and the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

Fla. Stat. § 670.202(2) (emphasis added).

**DONE and ORDERED** in Fort Lauderdale, Florida, this 30th day of October, 2014.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record