UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 13-cv-62381-BLOOM-VALLE

JAMAAL ANDERSON, JACOB BELL, DERRICK GAFFNEY, TAVARES GOODEN, FRANK GORE, SANTONIO HOLMES, GREG JONES, JEVON KEARSE, KENARD LANG, RAY LEWIS, BRANDON MERIWEATHER, SANTANA MOSS, CLINTON PORTIS, LITO SHEPPARD, FRED TAYLOR, and GERARD WARREN,

  Plaintiffs,

vs.

BRANCH BANKING AND TRUST COMPANY, as successor in interest to BankAtlantic, LLC,

  Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SEPARATE TRIALS**

COME NOW, Plaintiffs, JAMAAL ANDERSON, JACOB BELL, DERRICK GAFFNEY, TAVARES GOODEN, SANTONIO HOLMES, JEVON KEARSE, RAY LEWIS, BRANDON MERIWEATHER, SANTANA MOSS, CLINTON PORTIS, LITO SHEPPARD, and FRED TAYLOR ("Plaintiffs"), by and through their undersigned attorneys, file this Response in Opposition to Defendant, BRANCH BANKING AND TRUST COMPANY's ("BB&T"), Motion for Separate Trials (the "Motion for Separate Trials") [ECF No. 181], and in support thereof state as follows:

**I. INTRODUCTION**

Since the inception of this action, Plaintiffs have sought a trial by jury on all issues so triable. [ECF No. 1]. However, Plaintiffs advised counsel for BB&T (even before BB&T filed its Motion to Strike Plaintiffs' Demand for Jury Trial and Incorporated Memorandum of Law

1

[ECF No. 1248] herein) that the jury demand only applied to the "Negligence Plaintiffs" (i.e. those Plaintiffs who did not execute a signature card when BB&T opened their account at issue). Therefore, the only Plaintiffs who sought a trial by jury for all or part of their claims herein were Gaffney, Gooden, Lewis, Moss, Portis, Sheppard and Taylor. [ECF No. 133]. Ultimately, the Court determined that Gaffney, Lewis and Portis (the "Jury Plaintiffs") are entitled to a trial by jury and that Gooden, Moss, Sheppard and Taylor (as well as Anderson, Bell, Holmes, Kearse and Meriweather, who did not seek a trial by jury) (the "Non-Jury Plaintiffs") are not.

This action is currently scheduled to be tried during the two (2) week trial period commencing August 24, 2015. [ECF No. 158]. This Court has previously informed BB&T's counsel that the jury and non-jury trials will be tried together. Specifically, at the conclusion of a hearing on various motions on June 4, 2015, the Court and the parties were discussing various matters related to trial when the following exchange occurred:

> MR. HENDRIX:[1] I think that depends largely on what happens with the work before this Court in the next month or so. We have -- if nothing changes, we have seven plaintiffs in front of a jury, or multiple juries, and five non-juries. And I don't know what the Court's mind on whether that's two separate distinct events.
>
> THE COURT: It's not.
>
> MR. HENDRIX: Okay. You would hear the non-jury at the same time as the jury?
>
> THE COURT: Certainly.

See Transcript of Motion Hearing (June 4, 2015), at p. 45, lines 12-21 (an excerpt containing the relevant portions of this Transcript is attached hereto as **Exhibit A**).

Moreover, BB&T previously sought to separate the Plaintiffs for pleadings purposes [ECF No. 12 and 39] and for summary judgment purposes [ECF No. 103]. More specifically, in its Motion to Dismiss Plaintiffs' Amended Complaint or, in the Alternative , Motion for a More Definite Statement (the "Motion to Dismiss"), BB&T asserted that "[a]ssuming for the purposes of this Motion that this action may even be properly maintained as a single suit, which it cannot,..." and then proceeded to argue (among other things) that the Amended Complaint should be dismissed because "it is clear that there are several individualized circumstances at play here" and that "Plaintiffs fail[ed] to link particular Plaintiffs to particular facts." [ECF No. 12, at pp. 7 and 12]. It its Reply in Support of the Motion to Dismiss, BB&T asserted that

---

[1] Mr. Hendrix is lead counsel for BB&T.

"Plaintiffs' Response fails to adequately address [BB&T]'s argument that Plaintiffs impermissibly lump themselves together without properly tying specific allegations to specific Plaintiffs." [ECF No. 28, at p. 5]. In considering the Motion to Dismiss, the Court noted that BB&T "cites cases that fault complaints for being 'shotgun pleadings' that improperly lump parties together," but distinguished those cases and concluded that Plaintiffs were entitled to proceed on their claims together in a single lawsuit. [ECF No. 35, at pp. 19-20].

Similarly, the Court again denied BB&T's effort to separate the Plaintiffs' cases at the summary judgment stage. Specifically, in its Motion for Leave to File Separate Motions for Summary Judgment as to Each Plaintiff ("Motion for Separate MSJs"), BB&T asserted in relevant part:

> Each Plaintiff bases his claims on individualized debits that occurred from his own particular accounts, [ECF No. 89-5, at Exh. "E"], and no two Plaintiffs present claims that are factually the same. Accordingly, BB&T intends to file separate motions for summary judgment that are individually tailored to address the facts, circumstances, and evidence applicable to each Plaintiff (*e.g.*, account statements, signature cards, powers of attorney)….
>
> …[BB&T] seeks permission to file separate motions directed to each Plaintiff, based on the individualized facts surrounding each of the Plaintiff's challenged transactions, and the different evidence pertaining to each Plaintiff's account….
>
> …each Plaintiff's case stands on its own merits, so allowing [BB&T] to file a separate motions for summary judgment [sic] (and accompanying Statements of Material Facts as to which it is contended there is not genuine issue to be tried) promotes judicial economy and the interests of justice.

[ECF No. 103]. The Court denied the Motion for Separate MSJs and in so doing specifically stated that "[w]hile Defendant BB&T states that the facts, circumstances, and evidence applicable to each Plaintiff necessitates the filing of summary judgment motions in this fashion, **the Court expresses doubt regarding the lack of overlap.**" [ECF No. 104] (emphasis supplied).

Notwithstanding the fact that this Court has recognized the significant overlap in the Plaintiffs' claims throughout this litigation, and the fact that the Court has previously specifically advised BB&T's counsel that the jury and non-jury claims would be tried together, BB&T again seeks to separate the Plaintiffs' claims by virtue of its Motion for Separate Trials. BB&T's request for separate trials is not only inconsistent with the Court's prior rulings and instruction,

but it would also unnecessarily use additional time and resources of this Court, result in inconvenience to the parties and witnesses, cause the parties to incur additional cost and expense, and result in significant overlap of witness testimony and the introduction of exhibits at trial. Therefore, because (a) the issues sought to be tried by the Judge and by the Jury are similar, (b) the evidence required to reach the issues on those claims are similar, and (c) the potential for prejudice to BB&T is minimal and can be avoided by limiting instructions to the jury or by the manner in which the trial is conducted, BB&T's Motion for Separate Trials should be denied.

## II. THE STANDARD FOR SEPARATE TRIALS UNDER RULE 42(b)

Federal Rule of Civil Procedure 42(b) states:

> Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Rule 42(b) "requires the court to balance considerations of convenience, economy, expedition, and prejudice" and "the decision to order separate trials naturally depends on the peculiar facts and circumstances of each case." Alexander v. Fulton County, 207 F.3d 1303, 1325 (11th Cir. 2000), *receded from on other grounds*, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). The mere fact that there are multiple plaintiffs in a lawsuit is not dispositive, and courts should allow different claims by different plaintiffs to be tried together when the efficiency of a consolidated trial outweighs the potential for unfair prejudice or jury confusion. Id., at 1325-1326 (The defendant argued "that there was no way to try together the individual claims of the eighteen Plaintiffs, each involving different work histories, employment decisions and prayers for relief, without unfairly prejudicing their defense and confusing the jury." The Eleventh Circuit disagreed with the defendant and stated "[g]iven the common core of allegations, the substantial overlap of the particular claims, and the logical interconnection of several of the different forms the alleged discrimination took, we are satisfied that the district court did not abuse its discretion in finding that the efficiency of a consolidated jury trial outweighed the potential for unfair prejudice or jury confusion."). Similarly, courts do not apply Rule 42(b) to separate trials simply because claims or issues *could* be tried separately. Brown v. Toscano, 630 F.Supp. 2d 1342, 1346 (S.D. Fla. 2008) ("it does not follow that because such issues may be, and have been, tried separately, it is the better course to follow here").

In determining whether to conduct separate trials, this District Court has previously considered factors such as (i) whether the risks of prejudice and possible confusion are outweighed by the risk of inconsistent adjudications of common factual and legal issues, (ii) the burden on the parties posed by separate trials, (iii) the burden on witnesses posed by separate trials, (iv) the burden on available judicial resources posed by separate trials, (v) the length of time required to conclude multiple trials, and (vi) the relative expense to all concerned of the single versus multiple trial alternative. Fleming v. Home Depot U.S.A., Inc., 1998 U.S. Dist. LEXIS 23021 (S.D. Fla. July 8, 1998), citing Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985); and see e.g. Kimberly-Clark Corp. v. James River Corp., 131 F.R.D. 607, 608-609 ("In addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.") (citations omitted). The burden is on the moving party (i.e. BB&T) to establish that in light of these factors separate trials are appropriate. See e.g. Brown, 630 F.Supp. 2d at 1345 ("The party seeking bifurcation 'bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties.'") (quotations omitted).

District courts are "given broad discretion to decide whether or not plaintiffs' cases should be tried separately." Fleming, 1998 U.S. Dist. LEXIS 23021, at *9. However, a court's decision to employ Rule 42(b) is the exception, not the rule. See e.g. Exemar v. Urban League of Greater Miami, Inc., 2008 U.S. Dist. LEXIS 122698, *3 (S.D. Fla. 2008) ("Bifurcation is the exception rather than the rule.") (citation omitted); Brown, 630 F.Supp. 2d at 1346 (quotations and citation omitted); Precision Shooting Equip., Inc. v. Golden Eagle Indus., LLC, 2005 US Dist. LEXIS 36163 *7 (M.D. Fla. 2005) ("Though the court has the power to bifurcate, it is not a routinely made decision.").

## III. ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A. The Rule 42(b) factors weigh heavily in support of a single trial.

Despite BB&T's argument to the contrary, the factors to be considered by the Court when determining whether to order separate trials under Rule 42(b) weigh heavily in favor of a single trial. These factors are addressed below.

### Similarity of the Issues/Evidence.

The three Jury Plaintiffs have asserted causes of action for negligence and for unauthorized and ineffective transfers. Three of the Non-Jury Plaintiffs (Moss, Sheppard and Taylor) have asserted the exact same causes of action. The remaining Non-Jury Plaintiffs have asserted causes of action for breach of contract and for unauthorized and ineffective transfers. Therefore, the causes of action (and the defenses raised by BB&T to those causes of action) are exactly the same for the Jury Plaintiffs and three of the nine Non-Jury Plaintiffs (negligence and unauthorized and ineffective transfers), and one of the two causes of action (and the defenses raised by BB&T to those causes of action) raised by the remaining Non-Jury Plaintiffs are the same (unauthorized and ineffective transfers). As a result, the arguments and defenses advanced by the parties with respect to the merits of the claims asserted by the Jury Plaintiffs and the Non-Jury Plaintiffs overlap significantly.

When addressing the similarity of the issues and evidence in its Motion for Separate Trials, BB&T all but ignores the similarity in the claims asserted and defenses raised and instead focuses almost entirely on (a) the number of witnesses who will testify at the trial or trials, and (b) the documents that will be introduced into evidence at the trial or trials. In this regard, BB&T asserts that "only a limited number of witnesses and documents would be required at both the jury and non-jury trials." [ECF No. 181, at p. 8]. In support of its argument, BB&T identifies two third-party witnesses that would likely not testify in a separate jury trial and states that the testimony of the individual Plaintiffs themselves would not be relevant across the two trials. However, there are a significant number of witnesses who *would* likely testify in both trials (if the Court ordered separate trials), including, but not limited to, both parties' banking

experts (Catherine Ghiglieri and Pat McElroy),[2] a number of BB&T employees or former employees (Jacquelyn Orrizzi, Dwight McKey, Philip Fitzpatrick, Rita Martinez, Eric Boos) and former Pro Sports employees (Peggy Lee, Erick Carter and Roderick Mack). While some portions of the testimony by these witnesses may be specific to a particular Plaintiff, a portion of their testimony will address matters at issue for all Plaintiffs in light of the similarities in the claims and defenses asserted herein. Some of these global areas of testimony include, but are not limited to, (a) BB&T's policies (which are the same for, and applicable to, all Plaintiffs' accounts), (b) BB&T's general practices and procedures (which are the same for, and applicable to, all Plaintiffs' accounts), (c) BB&T's relationship with Pro Sports and general meetings and interactions with Pro Sports (which impacts all Plaintiffs' accounts), (d) BB&T's practices and procedures applicable to Pro Sport client accounts (which are the same for, and applicable to, all Plaintiffs' accounts), (e) BB&T's specific coding of all accounts on which a Pro Sports employee served as a power of attorney, (f) Pro Sports' interaction with BB&T and its employees, (g) BB&T's establishing of a universal CashLink platform for Pro Sports clients (which is the platform used to effectuate the vast majority of the transfers at issue for all Plaintiffs), (h) BB&T's audits or reviews of the Pro Sports client accounts as a whole, and (i) banking industry standards relating to the handling of the accounts at issue (which standards are largely the same for, and applicable to, all Plaintiffs' accounts). The testimony regarding each of these and other similar universal matters is applicable to the claims and defenses that will be presented for and against the Jury Plaintiffs and the Non-Jury Plaintiffs. Multiple trials will require duplication of this testimony, and such duplication would prolong amount of time to try the claims asserted in this lawsuit.

Similar duplication of the documentary evidence would occur if there were two separate trials of the pending claims. Specifically, while BB&T correctly asserts that documentation such as signature cards, powers of attorney, account statements and direct deposit authorizations are Plaintiff-specific and would not be necessary across two trials, BB&T's assertion that "[t]he only documents that are likely to be central to both a jury trial and the non-jury trial would be the CashLink authorization documents related to Plaintiffs' accounts, which comprise a very small

---

[2] As further evidence in the similarity among the Plaintiffs' claims and BB&T's defenses thereto, even the opinions which BB&T intends for its own expert to render in this case differ little from Plaintiff to Plaintiff.

number of documents," is far from accurate. [ECF No. 181, at p. 9]. Certainly, the CashLink authorization documents are central to all claims, but there are several additional categories of documents (each of which contain numerous documents) that are also central to all claims including, but not limited to, (a) BB&T's policies, (b) BB&T's guidelines, (c) general email communications between BB&T and Pro Sports regarding the relationship generally or the Pro Sports client accounts as a whole, and (d) internal BB&T communications and documents regarding Pro Sports, BB&T's relationship with Pro Sports, the Pro Sports' client accounts as a whole, and BB&T's desire and efforts to obtain additional accounts and deposits from Pro Sports clients, among other things. Each side of this litigation produced tens of thousands of pages of documents in discovery. To suggest that the overlap of documentary evidence will be "very small" if two separate trials are ordered is an understatement of the anticipated trial exhibits.

### Judicial Economy/Convenience.

BB&T's assertion that separate trials would "result in time and cost savings…to all parties involved as well as the Court" is equally unfounded. [ECF 181, at p. 9]. As noted above, as many as ten (10) witnesses would be required to duplicate some or all of their testimony if separate trials are ordered, and there would be a significant number of exhibits that would be introduced in both trials if separate trials are ordered (requiring the parties to lay the foundation for the documents and to ask the same or similar questions regarding these documents and their application to the claims and defenses asserted by the parties). In addition, the parties would be required to give separate opening statements and make separate closing arguments if separate trials are ordered (which statements and arguments would necessarily contemplate and address the testimony and documentary evidence that is applicable to all Plaintiffs, as outlined above, and would make many of the same or similar legal arguments regarding a large portion of the defenses raised by BB&T herein). Plaintiffs strongly disagree with BB&T's assessment that separate trials will result in greater efficiency and estimate that separate trials would result in *no less than* one (1) week of additional trial time (when compared to a single trial).[3]

---

[3] BB&T suggests that a single trial would result in delay because "both parties will be inclined to conduct themselves before the jury as though all twelve cases will be submitted for the jury's consideration." [ECF No. 181, p. 8]. This argument, however, is a truism which would apply in any case where there are both jury and non-jury claims, and the impact of this truism is far outweighed in the instant case by the duplication of witness testimony, documentary evidence,

Burden on the Parties.

The burden on the parties would increase significantly if two trials were conducted. First, the parties would incur additional costs and expenses associated with the increased trial time resulting from two separate trials (as opposed to a single trial). This would include not only attorney time and expense, but also time and expenses associated with each party's expert witness (both of whom reside in Texas) travelling to and from Texas on two separate occasions and testifying on many of the same issues (and rendering many of the same opinions) on two separate occasions.

In addition to the cost, the timing of two separate trials would create an added burden on some of the Plaintiffs. Plaintiffs are current and former players in the National Football League ("NFL") and the NFL regular season begins on September 10, 2015. The Plaintiffs currently playing in the NFL, as well as those who are still affiliated with the NFL or the broadcast of NFL games, analysis or programs, would be burdened by any further delay in the trial. When preparing their Joint Discovery Plan and Conference Report, the parties selected a trial date to occur in July 2015. [ECF No. 17]. This date was intentionally selected with consideration for the Plaintiffs' NFL and NFL-related schedules. As a result, this Court scheduled a July 2015 trial date and that remained the date for the trial of this matter until very recently. [ECF No. 19].[4] On May 21, 2015, BB&T filed its Motion to Continue Pretrial Conference, Trial, and Associated Deadlines [ECF No. 153], which sought to extend the trial date by sixty (60) days. On May 29, 2015, this Court entered its Order Granting in Part Motion to Continue and Amending Scheduling Order [ECF No. 158], which continued the beginning of the trial of the claims herein until August 24, 2015. If the trial of the Plaintiffs claims is bifurcated such that the trial of some Plaintiffs claims will not begin until September or later, the parties' initial stipulation to try this case during the NFL offseason will be frustrated, and the burden associated with those Plaintiffs trying their claims will increase. However, if this Court proceeds with a single trial it is likely that most, if not all, Plaintiffs could testify during this initial two week period, and prior to the start of the NFL regular season.

---

opening statement content and closing argument content that would occur if two separate trials were conducted.

[4] And see ECF No. 38 and ECF No. 57, which amend the original scheduling order but keep the July 2015 trial date.

### Burden on the Witnesses.

As indicated above, both parties intend to call a banking expert at trial. Both banking experts reside in Texas. Plaintiffs' banking expert (Catherine Ghiglieri) is busy and her schedule is booked far in advance.[5] Depending on what she may already have calendared on the date of a second trial (if this Court were to order separate trials), it may be a burden on Ms. Ghiglieri to participate in a second trial.

Moreover, there are several non-party witnesses that would be inconvenienced by having to testify at two separate trials if this Court were to order separate trials. These witnesses include former Pro Sports employees (such as Erick Carter, Peggy Lee[6] and Roderick Mack) and former BB&T employees (such as Phil Fitzpatrick, Eric Boos and Rita Martinez).[7]

### Relative Expense of Multiple Trials.

As indicated above, the parties would face increased expense if there were two separate trials of this matter. These increased expenses would include increased attorney time and expense associated with the longer duration of two separate trials, as well as the increased expert costs and expense associated with having to travel to and from Texas to testify on two separate occasions.

### How Discovery was Conducted.

This matter has not been bifurcated for discovery or any other purpose. In fact, each production request submitted by Plaintiffs to BB&T was a global request made collectively by all Plaintiffs to BB&T, and the only production request submitted by BB&T to Plaintiffs was a single request by BB&T to all Plaintiffs. Moreover, Plaintiffs' served two sets of interrogatories on BB&T, both of which were global interrogatories (i.e. issued by all Plaintiffs) to BB&T. Further, though BB&T issued separate interrogatories to each Plaintiff (presumably to comply with the limitations on the number of interrogatories and to facilitate the execution of the interrogatories by an individual Plaintiff), the questions posed within the interrogatories to each

---

[5] Plaintiffs assume that the same is likely true for BB&T's banking expert.
[6] In fact, Ms. Lee has already expressed to the undersigned counsel that having to testify at trial once will burden her in light of the fact that she just recently began a new job. Separate trials would only increase this burden by causing Ms. Lee to miss additional time from her new job.
[7] Presumably BB&T can control the schedules of Jacqueline Orrizze and Dwight McKey, both of whom remain employed by BB&T.

Plaintiff were the same. This further supports the conclusion that there are substantial similarities in the issues raised with respect to the Plaintiffs' claims.

### The Potential for Prejudice/Jury Confusion.

BB&T will not be prejudiced by the trying of all claims together, and even if there is potential for some prejudice such minimal prejudice is far outweighed by the factors outlined above and could be easily eliminated by way of jury instruction. In arguing that it would be prejudiced by the trying of all claims together, BB&T refuses to acknowledge the substantial overlap in the issues and the evidence which this Court has previously recognized exists. See e.g. ECF No. 104 ("While Defendant BB&T states that the facts, circumstances, and evidence applicable to each Plaintiffs necessitates the filing of summary judgment motions in this fashion, the Court expresses doubt regarding the lack of overlap."). Instead, BB&T focuses on what it deems to be the "*potential* misuse of testimony by jurors" and the "*potential* that the jury will be confused by the extensive volume of the testimony." [ECF No. 181, p. 4] (emphasis supplied).

In this case, any "potential" confusion over, or misuse of, the evidence will be prevented or eliminated by the evidence itself. Specifically, the exhibits which BB&T suggests could confuse the jurors are Plaintiff-specific account documentation. However, it should be very easy for the jurors to keep these exhibits separate and distinct from one Plaintiff another because each such Plaintiff-specific exhibit will contain the specific Plaintiff's name to the exclusion of all other Plaintiffs (e.g. Mr. Anderson's signature card, power of attorney and account statement will contain his name to the exclusion of all other Plaintiffs). Therefore, it is difficult to fathom how a juror would be confused over these exhibits or would be inclined to consider the other Plaintiffs' specific exhibits when considering a particular Plaintiff's claim (i.e. a juror will be able to easily understand that Mr. Anderson's account-related exhibits apply to Mr. Anderson only, and not to Mr. Lewis's or Mr. Lewis's claim). Further, the Court could easily instruct the jurors in this regard.

The same is true for Plaintiff-specific testimony. It will be very clear to the jury when Plaintiff-specific questions are being asked of a witness, not only by virtue of the fact that a specific Plaintiff's name will be used in the line of questioning, but also because most Plaintiff-specific questioning will be conducted in connection with the use of Plaintiff-specific exhibits. Further, the Court can easily instruct the jurors that testimony specific to the facts and

circumstances of a single Plaintiff is applicable only to that Plaintiff and should not be considered when making a decision on the claims asserted by other Plaintiffs.

In support of its prejudice argument, BB&T quotes Grayson v. K-Mart Corp., 849 F.Supp. 785, 790 (N.D. Ga. 1994) for the proposition that there is a danger that "one or two plaintiff's unique circumstances could bias the jury against the defendant generally, thus, prejudicing the defendant with respect to the other plaintiffs' claims." In Grayson, however, the plaintiffs could not argue that there was any similarity between their claims. In fact, the court in Grayson specifically found that "no common question of law or fact exist between the plaintiffs' cases." Id., at 789. Therefore, the plaintiff in Grayson was left to argue that it would be inconvenienced by the severance and the court found this to be unpersuasive in light of the lack of commonality between the Plaintiffs claims. Id. This clearly differs from the instant case where there are clear similarities in not only the claims asserted, but also in the defenses raised by BB&T to the claims. This Court has already recognized these similarities [e.g. ECF Nos. 35 and 105] and has already informed the parties that the trial of the jury and non-jury claims will occur simultaneously as a result. See p. 45, lines 12-21.

BB&T's reliance on Johnson v. Advanced Bionics, LLC, 2011 U.S. Dist. LEXIS 36289 (W.D. Tenn. 2011) is also misplaced. In Johnson, unlike the instant case, the various plaintiffs' cases were filed separately and were only later consolidated. Id. at *3-4. Moreover, there were different theories of liability and damages presented by the different plaintiffs in Johnson, and the court in Johnson specifically noted that this would result in "substantially different evidence" being presented by the different plaintiffs at trial. Id., at *19. Again, this is unlike the circumstances in the instant case where the theories of liability and damages (as well as BB&T's defenses to those theories) overlap significantly, and a large portion of the evidence will be the same across all Plaintiffs' claims.

BB&T then asserts that it will suffer prejudice if the jury is presented with the cumulative testimony of each Plaintiff. In so doing, BB&T argues that "the volume of documents and testimony that a jury would hear related to the nine non-jury Plaintiffs will *potentially* overwhelm the jury to the point that the jury will render a decision on the remaining three Plaintiffs based on the repetitive allegations of wrongdoing collectively by the Plaintiffs." [ECF No. 181, p. 6] (emphasis supplied). BB&T acknowledges that curative instructions can "be given to the jury to limit their consideration of the Plaintiff-specific testimony and documents"

but asserts that "such curative instructions will not be as effective as a separate trial at eliminating the potential prejudice of the cumulative testimony." Again, BB&T is left to argue a truism that is present in each and every case where jury and non-jury claims are tried together. If this argument alone were allowed to prevail, it is hard to imagine any circumstance where jury and non-jury trials would be tried together. For this and other reasons, curative instructions are ever-present in jury trials, and are fundamentally accepted. Where, as the Court has recognized in the instant case, there is an overlap of the claims and issues to be tried, the Court is well within its discretion to try jury and non-jury claims together. See e.g. Alexander, 207 F.3d at 1325 (11th Cir. 2000) (Notwithstanding the defendant's argument "that there was no way to try together the individual claims of the eighteen Plaintiffs, each involving different work histories, employment decisions and prayers for relief, without unfairly prejudicing their defense and confusing the jury," the Eleventh Circuit held that "[g]iven the common core of allegations, the substantial overlap of the particular claims, and the logical interconnection of several of the different forms the alleged discrimination took, we are satisfied that the district court did not abuse its discretion in finding that the efficiency of a consolidated jury trial outweighed the potential for unfair prejudice or jury confusion.").

Lastly, even if there were a legitimate concern for prejudice, the Court could cure any prejudice by excluding the jurors from the courtroom when a Non-Jury Plaintiff is called to testify or by other similar means.[8] See e.g. Mealy v. Fid. Nat'l Bank, 2 F.R.D. 339, 339-340 (E.D. NY 1942) ("Two trials, however, will not be necessary, as the court may impanel a jury, take such evidence as is germane to the third cause of action, submit that cause of action to the jury, then decide the issues of the first and second causes of action or, if necessary, take such additional testimony as may be required on those causes of action, in the absence of the jury."); Munkacsy v. Warner Bros. Pictures, 2 F.R.D. 380, 381 (E.D. NY 1942) (same) (citations omitted).

### B. In the event the Court is inclined to grant the Motion for Separate Trials, the Jury Plaintiffs' claims should be tried first.

After concluding that it is entitled to separate trials, BB&T then asserts that the bench trial should be held first and the jury trial should be held second on BB&T's theory that this

---

[8] By taking this position, Plaintiffs do not mean to suggest that there would be prejudice to BB&T or that the Court should take any of these alternate courses of action.

would somehow reduce the time and expense associated with the jury trial. This argument makes little sense in that nothing done in a trial outside the presence of a jury would reduce what evidence would need to be introduced, or which arguments would need to be made, in the presence of the jury.

Moreover, in considering this scenario the Eleventh Circuit has held that a court should generally allow the plaintiff(s) in a case to decide the order in which the claims are tried or, at a minimum, decide the order upon some other neutral basis. Harrington v. Cleburne County Bd. Of Educ., 251 F.3d 935, 939 (11th Cir. 2001) ("Even if the order of proof is a matter of the court's discretion, a litigant like [the plaintiff] can fairly expect that on matters touching at the core of trial strategy – witness order, organization of questioning, and the like – the court will wield its power sparingly….We thus think the court abused its discretion in not leaving to [the plaintiff] the option of deciding the order in which her claims are tried, or at least in not determining the order of trials on some neutral basis, such as the order in which the complaint pleads the claims grounded on different kinds of discrimination."). If the Court were to order separate trials of this matter, it would be logical (and Plaintiffs' preference) to try the Jury Plaintiffs' claims during the initial two-week trial period. It is highly probable that the Jury Plaintiffs' claims could be completed during this two week period, whereas, by BB&T's own implication,[9] the Non-Jury Plaintiffs' claims could not. Therefore, if the Court is inclined to order separate trials in this matter, the Court should conduct the jury trial during the initial two week trial period so that at least some of the Plaintiffs could have a resolution of their claim at the conclusion of this period.

By making this argument in this Section III.B., Plaintiffs are not conceding or suggesting that the Court should grant BB&T's Motion for Separate Trials. Instead, Plaintiffs maintain that BB&T's Motion for Separate Trials should be denied for those reasons in Section III.A. above and, as a result, this Section III.B. should be rendered irrelevant.

---

[9] In its Motion for Separate Trials, BB&T repeatedly suggests that the twelve Plaintiffs' testimony will take nine to twelve days. See ECF No. 181, at pp. 2 and 5. If true (and Plaintiffs are not suggesting it is), this equates to approximately 6 ¾ to 9 days of testimony by the Non-Jury Plaintiffs. Therefore, by BB&T's projection, the testimony of the Non-Jury Plaintiffs alone would take most (if not all) of the initial two week trial period.

## IV. CONCLUSION

This Court has previously recognized the similarities between the Plaintiffs' claims, and has already advised that it would try both the jury claims and the non-jury claims in a single trial. Because the Rule 42(b) factors weigh heavily in favor of a single trial, the Court should deny BB&T's Motion for Separate Trials and again declare that there will be a single trial on all claims and defenses herein.

WHEREFORE, Plaintiffs, JAMAAL ANDERSON, JACOB BELL, DERRICK GAFFNEY, TAVARES GOODEN, SANTONIO HOLMES, JEVON KEARSE, RAY LEWIS, BRANDON MERIWEATHER, SANTANA MOSS, CLINTON PORTIS, LITO SHEPPARD, and FRED TAYLOR, respectfully request that this Court deny Defendant, BRANCH BANKING AND TRUST COMPANY's, Motion for Separate Trials and grant such other and further relief as this Court deems necessary and proper.

/s/ Ronald D. Edwards, Jr.
**Matthew G. Brenner**
Florida Bar No. 515681
**James S. Toscano**
Florida Bar No. 899909
**Ronald D. Edwards, Jr.**
Florida Bar No. 0053233
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, Florida 32802
Telephone: (407) 843-4600
Fax No: (407) 843-4444
matt.brenner@lowndes-law.com
ronny.edwardsjr@lowndes-law.com
litcontrol@lowndes-law.com
tracy.kennison@lowndes-law.com
Attorneys for Plaintiffs

-AND-

**Elizabeth P. Kagan**
Florida Bar No. 330779
**Andrew T. Kagan**
Florida Bar No. 026291
Kagan Law Firm
8191 College Parkway, Suite 303

Fort Myers, Florida 33919
Telephone: (239) 466-1161
Fax No.: (239) 466-7226
Liz@kagan-law.com
Andrew@kagan-law.com
Attorneys for Plaintiffs

-AND-

**Laurence M. Landsman**
Illinois Bar No. 6202411
Block & Landsman
33 North LaSalle Street
Suite 1400
Chicago, Illinois 60602
Telephone: (312) 251-1144
Fax No.: (312) 251-1147
larry@block-landsman.com
Not currently admitted to practice in Florida or in the Southern District of Florida
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and furnished via CM/ECF electronic service on the 14 day of July, 2015 to DAVID S. HENDRIX, ESQUIRE, ANDREW J. MAYTS, ESQUIRE, ALEX DE ALEJO, ESQUIRE, and MARK SCHELLHASE, ESQUIRE, Post Office Box 3324, Tampa, Florida 33602 and 1221 Brickell Avenue, Suite 1600, Miami, Florida 33131.

/s/ *Ronald D. Edwards, Jr.*
Ronald D. Edwards, Jr.

0046479\159201\1979835v1

16