UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  2013-cv-62381-BLOOM-VALLE

JAMAAL ANDERSON, et al.,

    Plaintiffs,

v.

BRANCH BANKING AND TRUST COMPANY, as successor in interest to BankAtlantic, LLC,

    Defendant.
_____/

**DEFENDANT BRANCH BANKING AND TRUST COMPANY'S REPLY**
**MEMORANDUM IN SUPPORT OF MOTION FOR SEPARATE TRIALS**

Defendant, Branch Banking and Trust Company, as successor in interest to BankAtlantic ("BankAtlantic"), by and through its undersigned counsel, and pursuant to Local Rule 7.1, hereby files and serves its reply memorandum in response to Plaintiffs' Response in Opposition to BankAtlantic's Motion for Separate Trials [ECF No. 183], (the "Response"), and in support thereof, states as follows:

## I.     INTRODUCTION

In their Response, Plaintiffs cite prior orders entered by the Court and argue that the Court has previously addressed the issues presented in BankAtlantic's Motion for Separate Trials. Although the Court has previously addressed whether all twelve Plaintiffs should be separated into an individual case or motion, the Court has yet to consider whether separate trials would reduce the danger of prejudice to BankAtlantic or enhance judicial economy at trial. Therefore, Plaintiffs' citations in this regard are irrelevant.

The remainder of Plaintiffs' Response does little more than emphasize that background testimony on certain general categories of evidence will be repeated if separate trials are held—which BankAtlantic's Motion for Separate Trials plainly acknowledges will occur to a limited degree. Plaintiffs, however, proceed through their entire Response as though testimony related to each Plaintiffs' individual circumstances and transactions will not be required at trial. This Plaintiff-specific evidence at trial will predominate over the background information that Plaintiffs reference.

Plaintiffs seek to avoid the prejudice that will be caused to BankAtlantic by a single trial by noting that the documents will contain the Plaintiffs' names. This argument fails to appreciate the nature of the prejudice that separate trials will prevent. Plaintiffs' names on the document may preclude jurors from confusing the actual identity of the Plaintiffs, but it will not prevent the jury from giving weight to the testimony of the nine non-jury Plaintiffs (or witnesses regarding the non-jury Plaintiffs) even though the jury should entirely exclude such evidence from its consideration.

Finally, Plaintiffs assert that bifurcated trials will result in an additional week of testimony, but Plaintiffs' argument does not account for the increased efficiency and reduced cost that will be gained if nine of the twelve Plaintiffs are separately tried before the Court. The efficiency gained by separating the jury and non-jury trials will more than compensate for any

repeated testimony. Accordingly, the Court should enter an order separating the jury and non-jury trials.

## II. MEMORANDUM OF LAW

### A. The Court's Prior Statements Do Not Address the Change in Circumstances Created by the Striking of Nine Plaintiffs' Demand for Jury Trial.

Plaintiffs begin by pointing to the Court's prior statements regarding separation of Plaintiffs into different motions or cases. These prior statements are not germane to the instant Motion for Separate Trials.

#### 1. The June 4, 2015 Hearing

At the June 4, 2015 hearing on Plaintiffs' motion in limine and BankAtlantic's *Daubert* motion, the Court indicated that it would hear the jury and non-jury trials simultaneously. At that time, seven of the twelve Plaintiffs demanded a jury trial, and five others had dropped their demand by stipulation in Plaintiffs' response in opposition.[1] Since that time, however, the Court has entered an Order striking the jury demands of four additional Plaintiffs. Thus, whereas over half Plaintiffs previously demanded a jury trial, the Court has now determined that only three of twelve Plaintiffs will be heard by a jury. The striking of these additional jury trial demands significantly alters the efficiencies to be gained through separate trials, as well as the danger of prejudice if all Plaintiffs' claims are tried at the same time.

In requesting separate trials, BankAtlantic does not ignore the Court's prior statement. Rather, as noted at the outset of the Motion for Separate Trials, BankAtlantic makes its request based on the the change in circumstances precipitated by the striking of these additional jury demands. Plaintiffs' Response fails to recognize that this change significantly impacts the analysis of prejudice to BankAtlantic caused by a singe trial or the enhanced judicial economy that would be obtained through separate trials.

#### 2. BankAtlantic's Motion to Dismiss

In its original Motion to Dismiss the Amended Complaint, BankAtlantic argued that Plaintiffs should not be allowed to plead their claims as a single action. Judge Rosenbaum, in ruling on the Motion to Dismiss, held only that the Plaintiffs had not impermissibly created a shotgun pleading by bringing their claims in a single action. *See* [ECF No. 35, at p. 19].

---

[1] Although Plaintiffs claim that a jury trial was only demanded on behalf of the negligence Plaintiffs, the Fourth Amended Complaint still pled a jury trial on behalf of all Plaintiffs, regardless of the claims asserted.

Nevertheless, the standard for seeking separate trials is entirely different than the standard governing whether Plaintiffs could permissively join their claims in a single pleading. Unlike Rule 20, which governs permissive joinder of claims, Rule 42 focuses on considerations of prejudice, convenience, and other matters that affect the administration of trial. *Compare* Fed. R. Civ. P. 20, 21 (addressing the circumstanced under which parties may be permissively joined in a single action and severed if improperly joined) *with* Fed. R. Civ. P. 42(b) (addressing prejudice and convenience as grounds for ordering separate trials); *see also Vann v. Citicorp Sav. of Illinois*, 891 F.2d 1507, 1511 (11th Cir. 1990) (discussing the distinction between severance of improperly joined claims and ordering of separate trials). As such, whether the Court allowed Plaintiffs to proceed under the same pleading up to this point does not affect the determination of whether those same claims should be tried in a single trial, particularly where only a small fraction of the Plaintiffs' claims will be submitted to the jury for consideration.

        3.    *BankAtlantic's Motion for Leave to File Separate Motions for Summary Judgment*.

BankAtlantic's Motion for Leave to File Separate Motions for Summary Judgment is similarly irrelevant to whether separate trials should now be ordered. BankAtlantic filed a Motion for Leave to File Separate Motions for Summary Judgment on March 10, 2015. [ECF No. 103]. The Court later entered an Order stating that it doubted that there was not factual overlap between all twelve Plaintiffs. [ECF No. 104]. However, BankAtlantic does not request that the Court proceed to trial on each of the twelve Plaintiffs separately, but rather, seeks only to have the non-jury trial for nine of the twelve Plaintiffs held separately from the jury trial on the remaining three Plaintiffs. Moreover, the form in which BankAtlantic presented its Motion for Summary Judgment to the Court is irrelevant to the issue whether BankAtlantic will suffer prejudice if the same claims are all simultaneously presented before the jury, or whether judicial economy and convenience will be best served through separate trials. Therefore, nothing in the Court's order on BankAtlantic's Motion for Leave to File Separate Motions for Summary Judgment has any bearing on the current Motion for Separate Trials.

**B.     Plaintiffs Grossly Overstate the Similarity of Evidence to be Presented between Their Cases.**

*1.     Testimony Regarding the Individual Plaintiffs Will Predominate over the General Testimony.*

Plaintiffs' Response points to BankAtlantic's policies and procedures and BankAtlantic's interaction with Pro Sports as areas of common testimony that would be repeated between separate trials in this matter. BankAtlantic's Motion for Separate Trials plainly recognizes that some portion of the evidence regarding these generalized topics will be repeated. *See* [ECF No. 181, at p. 5] ("BankAtlantic acknowledges that separate trials would require the parties to present some documents and witness testimony that is common to all Plaintiffs twice . . . ."). Plaintiffs' Response does not address, however, the fact that the testimony and documents specific to the individual Plaintiffs will dwarf the general testimony on these same areas. Each of the Plaintiffs—by themselves—will have different signature cards,[2] powers of attorney, account statements, wire requests, withdrawal slips, official checks, direct deposit authorizations, and emails with Pro Sports employees and others. The volume of this individualized evidence will overwhelm the evidence that applies generally to all Plaintiffs' claims.

While Plaintiffs point generally to "policies" and "guidelines" without elaboration,[3] the majority of the testimony regarding these policies and guidelines will not be on their general operation. Rather, it will be the application of these policies to the transactions disputed by each individual Plaintiff that will predominate. For example, Plaintiffs will be tasked with providing testimony regarding delivery of account statements generally, but each Plaintiff will then also have to introduce evidence regarding how the account statements for their individual accounts were delivered. Similarly, each Plaintiffs' knowledge of their BankAtlantic accounts will be proven through records of individual transactions that reflect that the Plaintiffs accessed their accounts numerous times to withdraw cash, write checks, deposit checks, and purchase items

---

[2] Several of the Plaintiffs will have signature cards across multiple accounts, and even within the individual accounts themselves, many Plaintiffs executed several versions of signature cards throughout the tenure of their banking relationship with BankAtlantic.

[3] Plaintiffs also cite, as separate categories of evidence, BankAtlantic's "policies," "general practices and procedures," and "practices and procedures applicable to Pro Sport [sic] client accounts." [ECF No. 183, at p. 7]. Although referred to as three different categories of testimony or documents by Plaintiffs, these three categories are virtually the exact same documents. Plaintiffs' listing of these items as different classes of documents creates the unwarranted appearance that the documents common to all claims are more numerous than is otherwise the case.

utilizing their debit cards. These documents are voluminous and highly specific to the individual Plaintiffs, and for some Plaintiffs alone, they will exceed dozens of exhibits. The same will hold true for each of the categories of documents at issue in this case, and Plaintiffs assertion that the common testimony will exceed the individualized testimony simply fails to ignore the likely course and scope of the trial.

        2.    *Plaintiffs' Names on the Individual Documents Does Nothing to Alleviate the Prejudice Identified in BankAtlantic's Motion for Separate Trials.*

Moreover, Rule 42(b) does not focus on the similarities or differences in the facts and issues alone, but requires a balancing of (1) how those particular similarities or differences might prejudice a party and (2) how separation of trials might enhance judicial economy and relieve a burden on the parties. *See Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1260 (11th Cir. 1983) ("Separate trials are permitted 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy,' . . . and in this case we cannot fault the trial court's finding that severance was necessary on all three of these grounds." (citation omitted)). In this regard, Plaintiffs' Response merely notes that the Plaintiff-specific documents "will contain the specific Plaintiff's name to the exclusion of all other Plaintiffs." [ECF No. 183, at p. 11]. However, BankAtlantic is not concerned that the jurors will confuse the actual identity of the Plaintiffs themselves and be unable to differentiate, for example, Jamaal Anderson from Jacob Bell as distinct persons.[4] The prejudice that will arise at trial comes from the danger that—even though they recognize Plaintiffs as separate persons—jurors will nonetheless allow the facts that specifically relate to one Plaintiff to impermissibly color their interpretation of the evidence as it relates to all other Plaintiffs.

As noted above, the individualized testimony as to each Plaintiff will predominate at trial over the testimony that is truly generally applicable. Of that testimony, the jurors will only be tasked with evaluating the claims of three Plaintiffs, but will still be presented with the testimony and documents for each of the remaining nine non-jury Plaintiffs. BankAtlantic expects the nine non-jury Plaintiffs themselves to testify for approximately nine to twelve days regarding their individual cases, resulting in two weeks of testimony the jury would have to disregard. Furthermore, when discussing the Plaintiffs, each third-party witness will spend a far greater

---

[4] If the appearance of the Plaintiffs' names on the documents were sufficient to overcome prejudice associated with a joint trial, then prejudice from misuse or confusion by the jury would be virtually non-existent in any multi-party case involving documents. Such is not the case.

percentage of their time on the stand discussing the nine non-jury Plaintiffs than the three Plaintiffs that the jury will ultimately consider.  Thus, the jury would have to exclude from its mind the testimony of some witnesses entirely, and for others, the jury would have to carve out those facts that are relevant to the three jury-trial Plaintiffs independent from the facts for the nine non-jury Plaintiffs.  In executing this responsibility, there is substantial danger that the sheer volume of the testimony accusing BankAtlantic of impropriety will color the jury's view of the evidence and foster speculation of wrongdoing regardless of the facts actually presented.

Plaintiffs' attempt to distinguish *Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994), and *Johnson v. Advanced Bionics, LLC*, No. 2:08-CV-02376-JPM, 2011 WL 1323883, at *2 (W.D. Tenn. Apr. 4, 2011) are also unavailing.  In *Grayson*, the court noted that the plaintiffs had alleged same theories of recovery against the same defendant, but that factual dissimilarities in their individual situations nonetheless precluded them from jointly proceeding to a single trial even if they were properly joined in the same action.  *Grayson*, 849 F. Supp. at 789-90.  Like the plaintiffs in *Grayson*, Plaintiffs' Response repeatedly relies on the similarities of the theories of recovery and defenses but ignores the numerous factual dissimilarities among Plaintiffs' claims, and this Court should similarly order separate the trials because "[t]here is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally." *Id*. at 790.

The court in *Johnson* also faced the same arguments that Plaintiffs present here, i.e., that a single trial will eliminate duplicative evidence.  2011 WL 1323883, at *6.  The court found that, although economy was a laudable goal, the prejudice outweighed concerns of economy, and that "the savings to the judicial system of a joint trial would be diminished because of the substantially different evidence related to device failure and defect, causation, and damages that will be presented in each case."  *Id*.  *Johnson* therefore addresses the same arguments presented by BankAtlantic's Motion for Separate Trials and Plaintiffs' corresponding Response, and counsels in favor of separating the jury and non-jury Plaintiffs in this case.

      C.     **Separate Trials Will Enhance Convenience and Judicial Economy.**
           1.     *The Efficiencies Achieved from Separation of the Nine Non-Jury Plaintiffs Will More than Account for the Repetition of Certain General Testimony.*

Plaintiffs assert that separation of trials would require an additional week of trial in comparison to the single trial, due to the repetition of certain testimony, and again argue that broad categories of testimony, such as testimony related to "policies" and "guidelines," will be

7

duplicated between the trials without describing the specific testimony that will be presented regarding those documents. [ECF No. 183, at p. 8]. Plaintiffs' argument fails to appreciate how the evidence will likely be presented over the course of trial. In fact, Plaintiffs have only indicated that policies, once admitted into evidence, will be discussed only once, whereas all nine non-jury Plaintiffs will require examination of each of their transactions, accounts, and actions.

Plaintiffs do not address the fact that bench trials are generally accepted as faster and less expensive than jury trials. The efficiencies and cost savings that will be gained through a separate trial of the nine non-jury Plaintiffs will more than offset limited repetition of certain background testimony that will occur between the two trials. Additionally, the resolution of evidentiary issues for nine of the twelve Plaintiffs will also be expedited in a separate bench trial, and the need for sidebars to resolve these evidentiary issues will be eliminated. In the companion case of *Rolle v. Branch Banking and Trust Company*, the plaintiff required two weeks just to put on his individual case in a bench trial. If all twelve Plaintiffs proceed in a single trial before a jury, the result will be an unnecessarily lengthy and cumbersome proceeding that can easily be avoided through separate trials.

While some general documents and testimony will be repeated in the form of background information relative to the Plaintiffs' cases, as noted above, the witnesses will necessarily focus their testimony on the particular Plaintiffs bringing claims against BankAtlantic. Such testimony is likely to comprise the bulk of the testimony that each witness gives. If the Plaintiffs are separated into two separate trials, it will reduce or eliminate from each separate trial that portion of the witnesses' testimony that is only relevant to the Plaintiffs proceeding in the other trial.[5]

      2.    *Plaintiffs' Argument Regarding the NFL Season Ignores that None of Plaintiffs Is under Contract to Play Football in the Upcoming 2015 Season.*

Next, Plaintiffs assert that they will be inconvenienced by the NFL season if trial is bifurcated because the Plaintiffs are "current and former" NFL players, [ECF No. 183, at p. 9].

---

[5] Plaintiffs specifically cite to Peggy Lee, who has expressed concerns about missing work to testify at trial. If the case were to proceed as a single trial, Ms. Lee would spend approximately two days on the witness stand. If the trials were separated, Ms. Lee would testify for approximately one day for each trial. Plaintiffs do not explain how Ms. Lee, or any other witness, would suffer greater inconvenience from testifying on two different days as compared to a single two-day period.

Only two of the remaining Plaintiffs—Meriweather and Moss—played football in the 2014 NFL season, and as of the time that BankAtlantic files this response, neither is under contract with a team to play in the upcoming 2015 season. Plaintiffs fail to explain the need to complete all Plaintiffs' testimony during the two-week trial period beginning August 24, 2015 before the football season when it does not presently appear than any of the Plaintiffs, or at least the great majority of the Plaintiffs, will be participants in this year's season.

Moreover, Plaintiffs' argument in this regard illustrates the difficulties caused by a single trial. Under the scenario proposed by Plaintiffs, the single trial would commence on August 24, 2015, and consist only of the Plaintiffs' testimony regarding their claims. [ECF No. 183, at p. 9]. The trial would then have to resume at a later date with the remaining witnesses, which would leave both the Court and the jury in a position of having to recall the testimony given by Plaintiffs before the break when evaluating the subsequent testimony of other witnesses. This start-and-stop method of trial would inject an additional element of difficulty into the already arduous task of independently evaluating each Plaintiff. Accordingly, the Court should order separate trials and relieve the jurors and the Court of this burden and order separate trials.

### D. Excusing the Jury for Part of the Trial Would Effectively Create Two Trials, but with Unnecessary Complications.

Plaintiffs also cite two 1942 cases from the Eastern District of New York for the proposition that the Court could simply excuse the jury whenever evidence is presented that it would be outside its consideration. *See Mealy v. Fid. Nat'l Bank in New York*, 2 F.R.D. 339, 339 (E.D.N.Y. 1942); *Munkacsy v. Warner Bros. Pictures*, 2 F.R.D. 380, 381 (E.D.N.Y. 1942). Taking them in turn, *Mealy* involved a single plaintiff with three causes of action, only one of which would have been properly considered by a jury. 2 F.R.D. at 399-40. The court merely held that it would submit one of the three claims between the same plaintiff and defendant to the jury and take any additional testimony afterward if necessary for the remaining causes of action. *Id.* at 399-40. *Mealy* did not involve a multi-party lawsuit where each plaintiffs' claim would necessarily rise and fall on its own, and therefore, it is entirely distinguishable from this case. The second case, *Munkacsy*, involved virtually identical facts in which a single plaintiff alleged four causes of action against a single defendant, and all but one of the four claims called for a trial by jury. 2 F.R.D. at 381. The court made an identical ruling as *Mealy* in ordering a single trial, but this holding is equally as inapplicable to the facts of this case. *Id*.

9

Excusing the jury when testimony for one of the nine non-jury Plaintiffs is to be presented would inject an extra logistical element into the course of trial that would greatly burden the proceedings.  Evidence would have to be evaluated as trial progressed to determine whether it was germane to the jury Plaintiffs, the non-jury Plaintiffs, both groups, or neither group.  Moreover, with nine or more days of testimony from the non-jury Plaintiffs alone, the jury would have to be excused for up to two full weeks.  Such a procedural hurdle would eliminate any efficiency gained by trying the cases together.  Separation of the Plaintiffs into a jury and non-jury would eliminate the logistical difficulties associated with this approach while achieving the same result.  Accordingly, the Court should order separate trials for the jury and non-jury Plaintiffs.

WHEREFORE, Defendant, Branch Banking and Trust Company, as successor in interest to BankAtlantic, respectfully requests that this Court set a separate jury trial for Plaintiffs Gaffney, Lewis, and Portis, separate and apart from the non-jury trial to be held for Plaintiffs, Anderson, Bell, Gooden, Holmes, Kearse, Meriweather, Moss, Sheppard, and Taylor, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ David S. Hendrix, Esq.*
David S. Hendrix, Esq.
Florida Bar No. 827053
David.Hendrix@gray-robinson.com
GRAY ROBINSON, P.A.
401 E. Jackson Street (33602)
Suite 2700
Post Office Box 3324
Tampa, Florida  33601-3324
(813) 273-5000
(813) 273-5145 (fax)
*Attorneys for BB&T*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF electronic service on this 24th day of July 2015 to:

Matthew G. Brenner
Ronald D. Edwards, Jr.
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, FL 32802
Matt.brenner@lowndes-law.com
Ronny.edwardsjr@lawndes-law.com
Tracy.kennison@lowndes-law.com
litcontrol@lowndes-law.com

Elizabeth P. Kagan
Andrew T. Kagan
8191 College Parkway, Suite 303
Fort Myers, FL 33919
liz@kagan-law.com
andrew@kagan-law.com

Laurence M. Landsman
Block & Landsman
33 North LaSalle Street
Suite 1400
Chicago, Illinois 60602
larry@block-landsman.com

                                              */s/ David S. Hendrix, Esq.*
                                              David S. Hendrix, Esq.